RANDEE LEVINE *v.* GERALD LEVINE
(AC 24645)

Dranginis, Flynn and Mihalakos, Js.

Argued October 18, 2004—officially released March 22, 2005*

*Lori Welch-Rubin*, with whom, on the brief, were *Lisa A. Faccadio* and *Eric Dellutri*, certified legal intern, for the appellant (plaintiff).

*Howard M. Gould*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Randee Levine, appeals from the judgment of the trial court barring her motion for modification of alimony, brought against the defendant, Gerald Levine, on the basis of the doctrine of res judi-

---

* March 22, 2005, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

cata. On appeal, the plaintiff claims that the court (1) violated the 120 day rule set forth in General Statutes § 51-183b and (2) improperly applied the doctrine of res judicata.[1] We agree with plaintiff's second claim and, accordingly, reverse the judgment.

The trial court's memorandum of decision sets forth the following facts: "The parties' seventeen year marriage was dissolved on March 19, 1992. The parties had made agreements incident to the dissolution. The agreements of the parties were approved by the court and incorporated by reference in the judgment. . . . A separation agreement dated March 19, 1992, contained the provision regarding alimony in article III thereof.

\* \* \*

" 'Ten years from the date hereof, unless sooner terminated, alimony shall be reduced to One ($1.00) Dollar per year, modifiable upwards only in the event of the Wife's medical disability which prevents the Wife from gainful employment . . . .' "

The court also found, after reviewing its file, that the "plaintiff had previously filed for a modification of alimony [on February 23, 2000]. . . . [O]n May 18, 2001, there had been a full evidentiary hearing on that motion. That motion was denied by the court on June 20, 2001. Barely seven months after the denial of that motion, [the] plaintiff, with new counsel, filed the present motion for modification now before the court. The court noted the similarity of the grounds asserted for modification on the two postjudgment motions to modify. This raised the question whether the denial of the earlier motion was a bar to the plaintiff's proceeding again on what appeared to be the same claim." Following a hearing on a motion in limine, the court concluded that

---

[1] Because we agree with the plaintiff's second claim, we need not discuss her additional claims on appeal.

the new motion for modification was barred by the doctrine of res judicata. This appeal followed.

## I

The plaintiff first raises a jurisdictional issue. She maintains that § 51-183b, which sets time limits for rendering judgments in civil actions, specifically requires that "[a]ny judge of the Superior Court . . . who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. . . ." She maintains that the trial court last heard argument on July 20, 2002, and that she moved for an order on February 10, 2003, asserting that the court had lost jurisdiction because no decision had been reached by the court and 120 days had passed.[2] We reject this claim and hold that a hearing held for the very purpose of determining whether a second and subsequent trial or hearing is precluded or barred is not a "trial" for purposes of § 51-183b.

Because this claim involves the construction of a statute, our review of the court's interpretation of § 51-183b is plenary. See *Nunno* v. *Wixner*, 257 Conn. 671, 677, 778 A.2d 145 (2001); *Statewide Grievance Committee* v. *Ankerman*, 74 Conn. App. 464, 470, 812 A.2d 169, cert. denied, 263 Conn. 911, 821 A.2d 767 (2003). The bill before the legislature, which later was codified as the antecedent of § 51-183b, was signed into law on February 20, 1879, and took effect from its passage.[3] In its original form, it empowered a judge "who shall

---

[2] The plaintiff solely relies on General Statutes § 51-183b and not on our rules of practice.

[3] House Bill No. 32 entitled "An Act relating to Courts," which was approved in the 1879 session of the General Assembly, provided: *"Be it enacted by the Senate and House of Representatives in General Assembly convened:* Section 1. That any judge of the superior court or court of common pleas who shall have commenced the trial of any cause, shall have power

have commenced the trial of any cause," to continue such trial and render judgment after the expiration of the term of the court at which such trial commenced. It required, however, that the trial be completed and judgment rendered before the close of the next succeeding term. As originally adopted, the statute did not define the term "trial."

If, in fact, the July 20, 2002 proceeding constituted a "trial" for the purposes of § 51-183b, then the 120 day rule would apply, and the plaintiff's assertion of that statute on February 10, 2003, would have voided the court's continuing jurisdiction to render a decision. If that proceeding did not constitute a "trial," then the 120 day rule set forth in § 51-183b would not apply.

No definition of what constitutes a trial is to be found in § 51-183b. "[I]n the absence of other statutory . . . guidance, we may appropriately look to the meaning of the [word] as commonly expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 178, 713 A.2d 1269 (1998). The New College Edition of the American Heritage Dictionary of the English Language (1983) defines a trial as: "The examination of evidence and applicable law by a competent tribunal to determine the issue of specified charges or claims." In interpreting General Statutes § 52-192a, the offer of judgment statute, our Supreme Court found a similar definition to be pertinent: "Black's Law Dictionary (7th Ed. 1999) defines trial as '[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding.' " *Nunno* v. *Wixner*, supra, 257 Conn. 681.

In *Nunno*, our Supreme Court was required to interpret § 52-192a. That statute requires a trial court to

to continue such trial and render judgment after the expiration of the term of the court at which such trial commenced: *provided*, that such trial shall be ended and judgment rendered before the close of the next succeeding term.

"Sec. 2. This act shall take effect from its passage." (Emphasis in original.)

examine the record "[a]fter trial," and, if "the plaintiff has recovered an amount equal to or greater" than his offer of judgment, to assess 12 percent interest on the amount. General Statutes § 52-192a (b). In *Nunno*, the plaintiff sought the benefit of the offer of judgment statute after an arbitration proceeding which had become a final judgment because no timely petition for a trial de novo had been filed by the defendant. Our Supreme Court, although noting that some evidence had been taken during the arbitration, interpreted the definition of trial narrowly and determined that, because of the informality of the arbitration proceedings, those proceedings did not constitute a "trial" that would trigger the right to imposition of interest "after trial" under the statute. *Nunno* v. *Wixner*, supra, 257 Conn. 681.

A fortiori, where *no evidence* is taken by the trial court in hearing argument on a motion in limine, the proceeding, which solely involves the arguments of the attorneys, cannot be considered a trial.[4] Here, the plain-

---

[4] We note that the dissent in *Nunno* contended that the term "trial," at least for purposes of interpreting the offer of judgment statute, should be interpreted more broadly to include informal proceedings. It also concluded that it could have more than one meaning, one of which could include the typical, formal evidentiary trial, the other of which could include "the investigation and decision of a matter in issue between parties *before a competent tribunal,* including all the steps taken in the case from its submission to the court or jury to the rendition of the judgment." (Emphasis in original; internal quotation marks omitted.) *Nunno* v. *Wixner*, supra, 257 Conn. 691 (*Katz, J.,* dissenting), quoting *Tureck* v. *George*, 44 Conn. App. 154, 157, 687 A.2d 1309, cert. denied, 240 Conn. 914, 691 A.2d 1080 (1997).

We further note that when the judges of the Superior Court, including judges of the Supreme Court and the Appellate Court, acting in their dual capacity as judges of the Superior Court, amended the rules of court in 1992; see Practice Book § 11-19; to provide for a 120 day rule as to motions, they did not view General Statutes § 51-183b as including within the term "trial" arguments heard on motions, or the rule would have been unnec-· essary.

Practice Book § 11-19 provides: "(a) Any judge of the superior court and any judge trial referee to whom a short calendar matter has been submitted for decision, with or without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties. In the event that the judge or referee

tiff concedes that she did not have an evidentiary hearing on her motion. In fact, the entire July 20, 2002 hearing centered around the defendant's motion in limine contesting whether the plaintiff was entitled to offer evidence at a hearing because she had raised the same issue in an earlier proceeding before the court, *B. Fischer, J.* After careful consideration, we conclude that the General Assembly did not intend to include within the definition of "trial," for purposes of the 120 day rule found in § 51-183b, arguments on motions addressed to whether a plaintiff is precluded from an evidentiary hearing or trial because of a prior trial on the same or similar issues between the same parties.

Accordingly, we reject the plaintiff's claim that the court's decision was void under the provisions of § 51-183b.

## II

The plaintiff next claims that the court improperly applied the doctrine of res judicata. We conclude that this is the principal issue to be decided in this appeal and that it is dispositive.

Initially, we set forth the standard of review that governs our examination of this issue. "The issue of

---

conducts a hearing on the matter and/or the parties file briefs concerning it, the date of submission for purposes of this section shall be the date the matter is heard or the date the last brief ordered by the court is filed, whichever occurs later. If a decision is not rendered within this period the matter may be claimed in accordance with subsection (b) for assignment to another judge or referee.

"(b) A party seeking to invoke the provisions of this section shall not later than fourteen days after the expiration of the 120 day period file with the clerk a motion for reassignment of the undecided short calendar matter which shall set forth the date of submission of the short calendar matter, the name of the judge or referee to whom it was submitted, that a timely decision on the matter has not been rendered, and whether or not oral argument is requested or testimony is required. The failure of a party to file a timely motion for reassignment shall be deemed a waiver by that party of the 120 day time."

The plaintiff, here, did not seek to invoke this rule.

whether the doctrine of res judicata is applicable to the facts of the present case is a question of law. Accordingly, our review is plenary." *Gaynor* v. *Payne*, 261 Conn. 585, 595, 804 A.2d 170 (2002).

"The principles underlying the doctrine of res judicata, or claim preclusion, are well settled. [A] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. . . . Furthermore, the doctrine of claim preclusion . . . bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." (Citation omitted; internal quotation marks omitted.) Id., 595–96.

In *Borkowski* v. *Borkowski*, 228 Conn. 729, 638 A.2d 1060 (1994), our Supreme Court held: "Applicable to dissolution actions, as well as to other kinds of litigation, is the principle that an adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive not only as to matters actually determined, but as to matters which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject matter of the action. . . . This policy of avoiding duplicitous litigation is particularly important in the context of family law where courts should welcome the opportunity to ease the burden of post-divorce litigation over enforcement or modification of alimony claims . . . and attempt to foster amicable dissolution and certainty." (Citations omitted; internal quotation marks omitted.) Id., 738–39.

We agree with the defendant in the present case that the central issue arises out of that portion of the dissolu-

tion of marriage agreement that states: "Ten years from the date hereof, unless sooner terminated, alimony shall be reduced to One ($1.00) Dollar per year, modifiable upwards only in the event of the Wife's medical disability which prevents the Wife from gainful employment . . . ." This issue was first presented to the court, *B. Fischer, J.*, on May 18, 2001, ten months before the ten year period expired. We do not agree, however, that the court, *Parker, J.*, properly determined that the plaintiff's later motion, heard after the ten year anniversary of the divorce had passed, seeking to avoid the reduction of alimony to $1 per year was "barred by the doctrine of res judicata" because Judge Fischer had denied the plaintiff relief prior to the ten year anniversary having occurred.

As a part of our plenary review of Judge Parker's holding that there was a res judicata bar to the later motion, we review the factual findings and legal conclusions of the court. The court held that the claim made in the motion for alimony modification was "made in the earlier motion," and it found that "[t]he reason or reasons for the denial of the earlier motion are unknown [to the court]." However, the key provision at issue in the stipulation and agreement of the parties that was incorporated into the dissolution decree provided that if alimony had not been terminated earlier, it automatically would be reduced to $1 per year ten years from the date of the decree unless a medical disability prevented the plaintiff from gainful employment.

The plaintiff's counsel stated that she thought Judge Fischer's denial of the earlier motion was made on the basis of prematurity because, at the time the motion was made, the ten year anniversary of the decree had not yet been reached. In its memorandum of decision, the court addressed this statement of counsel, stating that it was "speculation" and "an unadulterated acknowledgement by the plaintiff that the claim made

in the earlier motion is the same made in the motion now before the court." The court also reasoned: "On May 18, 2001, the plaintiff's counsel told the court: '[The plaintiff] . . . has no reasonable prospects for future employment ever. That evidence is not contradicted.' The plaintiff can not now disavow the position her counsel maintained on her behalf at the May 18, 2001 hearing on her earlier motion. 'A party is bound by a concession made during the trial by his attorney. *Kiss* v. *Kahm*, 132 Conn. 593, 595, 46 A.2d 337 [1946]; *Russell* v. *Lassoff*, 125 Conn. 736, 737, 7 A.2d 435 [1939]; *State* v. *Tuller*, 34 Conn. 280, 294 [1867]; 9 [J.] Wigmore, Evidence (3d Ed.) §§ 2594, 2597. The employment of new counsel does not affect the validity of a concession made. *Smith* v. *Whittier*, 95 Cal. 279, 289, 30 P. 529 [1892].' *Housing Authority* v. *Pezenik*, 137 Conn. 442, 448, 78 A.2d 546 (1951). Oral concessions made by a party's attorney during a colloquy with the court constitute judicial admissions. *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, 64 Conn. App. 263, 779 A.2d 862 (2001). 'Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . A judicial admission is, in truth, a substitute for evidence, in that it does away with the need for evidence.' . . . *State* v. *Nguyen*, 52 Conn. App. 85, 89–90, 726 A.2d 119 (1999), aff'd, 253 Conn. 639, 756 A.2d 833 (2000). 'A party is bound by a judicial admission unless the court, in the exercise of its discretion, permits the admission to be withdrawn, explained or modified. . . . *Days Inn of America, Inc.* v. *161 Hotel Group, Inc.*, 55 Conn. App. 118, 127, 739 A.2d 280 (1999).' *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, supra, 272–73. In fairness, the plaintiff's present attorney has not denied that her present claim was made in her earlier motion."

In our opinion, a "concession" by the plaintiff's attorney in the May 18, 2001 proceeding could not govern

what the plaintiff's health would be ten months later when the ten year anniversary of the dissolution occurred, which, according to the decree, triggered diminution of the annual alimony to $1 per year unless the plaintiff was medically disabled and unable to maintain gainful employment. Her attorney was not possessed of some divine omniscience that accurately could predict events and conditions in the future. Although we acknowledge that a party may be bound by an admission of her attorney as to some past event, it is impossible for her attorney to make an "admission" as to what will happen in the future as to his client's health. Further, the court acknowledged that it did not know the basis for the denial of the plaintiff's earlier motion, and, even if it were based on the court's finding that the plaintiff was not medically disabled at that time, such a finding would not preclude the plaintiff from relitigating that issue should her health change.

Here, the plaintiff is possessed of a right under her dissolution decree to have the court hear evidence of her disability and her inability to maintain gainful employment. The denial of her earlier motion for modification, whether based on the same or a similar claim of medical disability, should not automatically bar her renewed motion, nor should the defendant be barred from again litigating a claim that the plaintiff is no longer medically disabled should her health improve at some point in the future.[5]

[5] Our General Assembly recognizes that a person can be able-bodied at one point in time and disabled at a later point in time; conversely, it also recognizes that a person can be deemed permanently disabled at one juncture and be subject to termination of benefits at a later juncture because the disability no longer exists. See General Statutes § 5-169 (e) ("[r]etirement income being paid for disability retirement shall end when and if the disability ends"); General Statutes § 31-315 ("[a]ny award of . . . [workers'] compensation . . . shall be subject to modification . . . upon the request of either party . . . whenever it appears to the compensation commissioner . . . that the incapacity of an injured employee has increased, decreased or ceased"); see also *Briggs* v. *State Employees Retirement Commission,* 13 Conn. App. 477, 488, 538 A.2d 225 (1988) ("[w]e also note that a determination today that the plaintiff is permanently disabled does not preclude a different

The judgment is reversed and the case is remanded for a new hearing on the plaintiff's motion for modification of alimony.

In this opinion the other judges concurred.

determination tomorrow if his condition changes"), rev'd on other grounds, 210 Conn. 214, 554 A.2d 292 (1989).

In the present case, the dissolution decree specifically lowered alimony to $1 per year unless the plaintiff became medically disabled and unable to maintain gainful employment. Such a fact, as exemplified by our workers' compensation law, is subject to change, and the decree recognized and accounted for that possibility.